BOWMAN v. RAINETAUX AND SABBATON.

If an assignee once accepts an assignment, he undertakes the duties of the office, and is responsible, although he takes no active part, but leaves the control to his co-assignee.

A deed of disclaimer is not essential, though most prudent.

The administrator of an assignee, is not bound to superintend the trust property.

The liability of a co-assignee for misapplication of funds by his associate, established.

*Mr. D. D. Field*, for complainant.

*Mr. Mulock*, for defendant Rainetaux.

Mr. Rainetaux admits in his answer, that he and Anthony Rainetaux accepted the assignment. This is sufficient to make him responsible as assignee. He should have disclaimed, if he did not intend to act. Although a deed of disclaimer is most prudent, yet it may be inferred from conduct. (*Stacey* v. *Elph*, 1 *Mylne & Keene*, 199.) *Butler and Baker's case*, 3 *Rep.* 26 b, 27 a.) Here he actually accepts, and Sabbaton swears that he was, to a certain extent, consulted for a short time after the assignment. In *Marriott* v. *Kinnesley*, *Tomlyn's Rep.* 470, a trustee of stock was held liable, where he had authorized an agent to transfer it, although he had no knowledge of the deed of trust, and no notice, except that in a letter of the agent, requesting the transfer, it was stated it was necessary for the benefit of C. M., the actual *cestui que trust.* The responsibilities of an assignee attach to him. But by the order of the 12th day of May, 1831, in the cause of *Burrall* v. *Rainetaux*, he was superseded, removed from the situation of assignee; and Anthony Rainetaux is declared to be sole assignee for all further acts and deeds to be done thereunder. It appears, that the suit in which this order was obtained, was settled; but the order remained in force. I consider it sufficient to relieve the defendant from any constructive liability, as assignee. If he after-

wards actually interfered, he must be responsible on that ground.

The then sub-assignee, Anthony, died the 27th of June, 1832. The defendant became his administrator. If the real estate was then unsold, it did not descend even to Anthony's heirs, but the title vested in the court of chancery. (1 *R. S.* 730, § 68.) As to the personal property, supposing it to pass as respects title, I think it would be going too far to hold that it is incumbent upon the administrator of an assignee to assume the supervision of the trust property, or to be legally responsible for its administration. It seems to me the creditors, or *cestui que trust* provided for, should see that an active trustee was appointed.

If I could have found sufficient upon which to charge the defendant, without the expense and delay of a reference, it would have been my duty to have done so. If, for example, it had turned out that the debt in schedule F, had been paid before May 12, 1831, out of the property, by Sabbaton or others, in preference to the debts in schedule E, among which was the complainants, it would have been enough. But this is not established. Evans and Dobbins' debt was not paid, till after that time. The acceptances for Hawley's drafts, are stated to have been paid by Hawley. Whether Sabbaton afterwards paid Hawley, or whether the acceptances were on funds of Hawley's, does not appear.

It is to be noticed, that while the defendant denies interfering with the property, or acting personally in trust, he does not deny the reception of any money.

Sabbaton was left in the exclusive possession and management of the whole business. There can be no doubt that the defendant is responsible for his misconduct, or violation of the provisions of the assignment: nor, on the other side, any doubt that he is entitled to avail himself of all the acts lawfully done by Sabbaton; for example, the application of the funds in payment of debts to the preferred creditors. There must be an order of reference, to take and state an account under the assignment.

1839.

Bowman
*v.*
Rainetaux and
Sabbaton.

1. The master to ascertain whether any and what sums of money have come to the hands of the said defendant, Augustus C. Rainetaux, arising from the funds and property set forth in the assignment of the 18th of April, 1829, and the application thereof.

2. Next, to ascertain the value of the property assigned on the day of such assignment, and the profits which were made by the use of the same, down to the 12th day of May, 1831, and what monies were applied in payment of the debts, provided for in such assignment, out of such property or profits, or out of any other funds, and to whom such monies were paid, distinguishing the class of creditors, according to the schedules D, E, and F, annexed to such assignment.

3. That such master ascertain what disposition was made of the assigned property, or of any articles which may have substituted for any part thereof, from and after the said 12th day of May, 1831, down to the 27th day of June, 1832, and what was the price paid for, or the value thereof, at the time of such disposition, and to whom and when made, and to state, with all special circumstances relating to the same, and what was the application of any monies arising from such property, or the use thereof, or profits made by the use thereof, and especially whether any debts provided for in such assignment were paid thereout, or out of any other funds or monies, and by whom, and when, and the names of the creditors to whom such payments were made, and in what class in such assignment such said creditors are provided for.

4. The master to ascertain whether the defendant, Augustus C. Rainetaux, at any time after the said 12th day of May, 1831, received any monies from, or on account of the property so assigned, or arising from the same, or has in any manner exercised any authority or control in and about the property so assigned, or in any manner interfered therewith.

5. The usual directions as to production of books, examination of parties, &c. The evidence read at the hearing, *to be read* before the master, with liberty to receive other

evidence, or examine other witnesses, to the matters arising under this order, except that no witness heretofore examined, be examined before the master, without a special order.